# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **LORENZO STEWART,** | ) | Civil Action No. 7:17CV00299 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **LAURENCE WANG,** *et al.*, | ) | By: Norman K. Moon |
| Defendants. | ) | Senior United States District Judge |

Lorenzo Stewart, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983,[1] alleging that he was denied adequate medical treatment for his Hepatitis C ("Hep C") infection. He also was allowed to amend to add a claim regarding a failure by Dr. Wang to timely treat an injury to his middle finger. (Dkt. No. 33 (setting forth claim); Dkt. No. 36 at 1 n.1 (allowing amendment); Dkt. No. 37 (Order).) I previously granted portions of defendants' motion to dismiss, leaving only Dr. Wang and Warden Davis as defendants.[2]

Pending before me is a motion for summary judgment filed on behalf of Dr. Wang.[3] (Dkt. No. 42.) Upon review of the record, I conclude that Dr. Wang's motion for summary judgment should be granted. Because the motion only seeks relief as to the Hep C claim and fails to address the claim based on Stewart's finger injury, Dr. Wang remains a defendant as to the latter claim. If Dr. Wang wants to file a separate motion for summary judgment addressing that claim, he should do so not later than 30 days after entry of the accompanying order.

---

[1] I omit internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

[2] On September 25, 2018, I dismissed Director Clarke and Unit Manager Lovern. (Dkt. Nos. 36, 37.)

[3] Warden Davis, who is alleged to have ignored Stewart's grievances and complaints, has not yet filed his own motion for summary judgment, but has until August 20, 2019 to do so. (Order, Dkt. No. 50.)

## I.

The evidence before me includes a declaration from Dr. Wang, Stewart's verified complaint, and Stewart's medical records from the relevant time period.

According to his affidavit, Dr. Wang is a medical doctor licensed in Virginia. Since 2007, he has been a contract physician of the Virginia Department of Corrections ("VDOC") at Green Rock Correctional Center. (Wang Decl. ¶¶ 1–2, Ex. A to Mem. Supp. Mot. Summ. J., Dkt. No. 43-1.) Stewart's records reflect that he was noted to have Hep C when he entered Green Rock. (*Id.* ¶ 6; *see also* Stewart Med. Records, Ex. B to Mem. Supp. Mot. Dismiss, Dkt. No. 26-2.)

Dr. Wang's treatment of Stewart began on May 6, 2014, when he reviewed and approved the history and physical taken by the nurse and requested that Stewart be continued on his admission medications. According to Dr. Wang, less than two months before, Stewart underwent two tests, and the results on both were consistent with "only trace activity" related to Hep C. (Wang Decl. ¶ 7.)

Dr. Wang further avers that in May 2014, physicians treating inmates in jails did not have medications that they could prescribe to inmates in Stewart's condition and with test results like his. According to Dr. Wang, although VDOC had previously prescribed ribavirin and interferon for Hep C patients, those medicines had been discontinued for use in VDOC prisons in February 2014. Even if they had been available, moreover, Dr. Wang notes their shortcomings, especially for Stewart. Specifically, those medicines had a response rate of less than 50% for patients with Stewart's type of Hep C and they had significant side effects, including flu-like symptoms, neuropsychiatric disorders, and autoimmune syndromes. Dr. Wang suggests that the low success rate and the significant side effects, as well as the fact that Stewart's Hep C was asymptomatic,

2

would not have made them a good choice for Stewart at that time, even if they had been available within VDOC. (*Id.* ¶¶ 7–8.)

During a visit in May 2014, Dr. Wang informed Stewart that a new Hep C treatment was in development and that VDOC was developing a new treatment protocol. He told Stewart that he would be evaluated under that protocol. (*Id.* at ¶ 9.) Dr. Wang states that he followed VDOC guidance and the standard of care in monitoring Stewart's condition and waiting for the development of the new treatment. (*Id.*)

According to Dr. Wang, "Stewart never exhibited any material symptoms related to Hepatitis C" "while waiting for the new treatment." (*Id.* ¶ 8; *see also id.* ¶¶ 22–23.) This fact, however, is disputed to some degree. As discussed in more detail below, Stewart alleges that he experienced some medical issues while waiting for the treatment, in roughly the period of May 2014 until September 2017, although he does not allege nor have any evidence to show that those symptoms were the result of his Hep C.

The updated guidelines and treatment were released in June 2016, and presented a new screening protocol. Those prisoners eligible for treatment under the new guidelines would receive treatment from the VCU Medical Center Hepatology group, part of the Medical College of Virginia ("MCV"); all others would be monitored on a certain schedule. (June 2016 Guideline at 1, 12-13, Dkt. No. 26-17.)

Dr. Wang ordered blood work on Stewart to evaluate him under the new guidelines. The results were "equivocal," but because one of the test results warranted referral for treatment, Dr. Wang ordered a fibroscan, a special ultrasound of the liver. (Wang Decl., ¶¶ 10–12.) Because of a state-wide lack of machines and skilled staff necessary to perform the test, the test could not be done until August 31, 2016. In response to the test, which showed mild to moderate liver

fibrosis, Dr. Wang ordered additional testing "relevant to the choice of treatment." (*Id.* ¶ 14.) In September 2016, he submitted all of the test results to Dr. Ammonette, per VDOC's policy, for his evaluation. Dr. Ammonette approved treatment and, by October 4, VDOC had submitted all of the records to MCV for its review. (*Id.* ¶¶ 14-16.)

Stewart did not have his first specialty telemedicine review until May 24, 2017, but the delay from October 4, 2016 until May 24, 2017 was "due to lack of availability by the MCV providers." (*Id.* ¶ 17.) Treatment was initiated on June 20, 2017, and the treatment has been successful—as of September 2017, the Hep C virus was undetectable in Stewart. (*Id.* ¶ 19.) As noted, Dr. Wang emphasizes that Stewart did not have any symptoms related to his Hep C diagnosis at any time. (*Id.* ¶ 22.)

Stewart filed a response and a supplemental response to the motion in which he again takes issue with the delay in treatment. (Dkt. Nos. 46, 49.) He alleges that Dr. Wang waited to treat him until other problems arose, like blood in his bowels "or when I crouch up to sip." (Pl's Opp'n 3, Dkt. No. 46.)[4] In his verified complaint, he notes different or more vague symptoms he experienced while waiting for treatment. (Compl. at 5 (referencing "unnecessary suffering" due to the delay); *id.* at 3 (stating that due to the waiting he now has "other problems such as bladder problems" and an "ammonia build up in [his] urine.").) He offers nothing to connect those symptoms, however, to the delay in treatment of his Hep C. He further complains that Dr. Wang

---

[4] His opposition also refers to a number of other symptoms, "such as feeling tired, muscle and pain in my joints, itchy skin, very dark urine, nausea, vomiting, light bowels movement [and loss] of appetite." (Opp'n at 1, 3.) It is not clear from his opposition, though, whether he is arguing that those symptoms are occurring now or occurred while he was awaiting treatment. In any event, because his opposition is not sworn or verified, I do not consider statements in the opposition as evidence to counter the summary judgment evidence. *United States v. White*, 366 F.3d 291, 300-01 (4th Cir. 2004). However, I treat statements in Stewart's verified complaint, if based on personal knowledge, as evidence in opposition to the summary judgment motion. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).

"showed no caring in his job" and that he "has a problem with his oath that he made when he became a doctor." (*Id.* at 3.)[5]

## II.

Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the nonmoving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). In making that determination, I must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48. Instead, the non-moving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor. *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 930 (4th Cir. 1990) (quoting *Anderson*, 477 U.S. at 249–50).

---

[5] Stewart also seems to believe that Dr. Wang is arguing that he never had Hep C, which is not correct. Dr. Wang acknowledges that Stewart had Hep C, but explained that he was asymptomatic. Elsewhere in his opposition, Stewart asks the court to "grant partial summary judgment on liability to the plaintiff on his due process claims." (Opp'n at 2, Dkt. No. 46.) But his complaints do not allege a due process violation. Additionally, although his complaint references in passing other medical conditions, specifically epilepsy and hypertension, he does not base any part of his claim on those conditions, and his opposition to the summary judgment motion does not address them, either.

5

Stewart is proceeding *pro se* and, thus, entitled to a liberal construction of his pleading. *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In the Fourth Circuit, verified complaints by pro se prisoners are to be considered as affidavits when the allegations contained therein are based on personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).

## III.

Stewart's complaint lists three separate claims, but all are based on his assertion that Dr. Wang's delaying treatment for Stewart's Hep C violated his Eighth Amendment right to be free of cruel and unusual punishment. In order to state an Eighth Amendment claim based on the denial of medical care, a plaintiff must demonstrate that the defendant's acts (or failure to act) amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This requires a showing of two elements. First, he must provide evidence showing that he suffered from an objectively serious medical need. A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008); *see also See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (stating there is no expectation that prisoners will be provided with unqualified access to health care).

Second, to show deliberate indifference, he must show that subjectively, the defendant was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Instead, the defendant's disregard for the plaintiff's medical condition must have been "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be

6

intolerable to fundamental fairness." *Jackson v. Sampson*, 536 F. App'x 356, 357 (4th Cir. 2013).

A delay in medical treatment may constitute deliberate indifference. *See Smith v. Smith*, 589 F.3d 736, 739 (4th Cir. 2009). Where a prisoner's claim is based on a delay in treatment, though, he must also show that the delay caused him to suffer "substantial harm." *Webb v. Hamidullah*, 281 F. App'x 159, 166 (4th Cir. 2008).

Dr. Wang contends that Stewart does not have evidence from which a jury could rule in his favor. First, he contends that Stewart has not shown a "serious medical need" because he fails to present evidence showing that his Hep C required treatment at an earlier date than when Dr. Wang began his workup for Hep C treatment. Second, he argues that the undisputed facts do not demonstrate deliberate indifference.[6] As I discuss next, I conclude that, even assuming he has shown a "serious medical need," there is no evidence that Dr. Wang was deliberately indifferent. Moreover, Stewart cannot establish that the delay caused him to suffer "substantial harm." *Webb*, 281 F. App'x at 166.

As to deliberate indifference, no jury could conclude that Dr. Wang's conduct in treating Stewart's Hep C was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Jackson*, 536 F. App'x at 357. Notably, Dr. Wang continued to monitor Stewart throughout his tenure at Green Rock and he did so in compliance with VDOC policies and treatment guidelines, a fact that plaintiff does not contest. He also explained why, in his professional judgment, Stewart was not a candidate for

---

[6] Dr. Wang also moves for summary judgment on the grounds that he is entitled to qualified immunity. In light of my ruling on the merits of his claim, it is unnecessary to address the issue of qualified immunity.

7

other medicines, even if they had been available to VDOC prisoners. Significantly, as soon as the new treatment protocols were put in place, Dr. Wang ordered testing to evaluate Stewart and provided the relevant information to the appropriate personnel, who decided Stewart was eligible for treatment. Moreover, it is undisputed that the delay from October 4, 2016 until May 2017, is attributable to MCV personnel and their schedules, over which Dr. Wang had no control. In short, Stewart has failed to show deliberate indifference by Dr. Wang and thus his claim must be dismissed.

Summary judgment in Dr. Wang's favor is also appropriate because Stewart fails to point to any evidence showing that any delay in treatment of his Hep C caused him substantial harm. He identifies several symptoms that arose while he was awaiting treatment and alleges that the waiting was stressful. Dr. Wang has offered sworn testimony that Stewart's Hep C remained asymptomatic while he was awaiting treatment. And critically, Stewart does not allege that those symptoms were related to or caused by his Hep C, as opposed to some other disorder, let alone point to any testimony from a medical professional to show it. He would have to prove this in order to show that a "substantial harm" resulted from the delay. Just as significantly, the Hep C virus is now undetectable in Stewart, so there is no evidence that the delay resulted in any inability to treat his Hep C. For all of these reasons, I conclude that Dr. Wang is entitled to summary judgment on this claim.[7]

---

[7] I have recently held, in another case where the prisoner brought claims based on the denial of treatment for his Hep C, that the defendants were entitled to qualified immunity on the claim, but that plaintiff had alleged sufficient facts to survive summary judgment on his claims for declaratory and prospective injunctive relief. *Riggleman v. Clarke*, No. 5:17-cv-00063, 2019 WL 1867451 (W.D. Va. Apr. 25, 2019). But the facts in *Riggleman* are far different than the facts here. Most importantly, in *Riggleman*, the defendants had determined that the plaintiff was not eligible for treatment and he still was not receiving treatment at the time of summary judgment. Here, by contrast, Stewart received treatment and was in the first wave of prisoners to receive treatment under the new treatment protocol. Indeed, he admits in his opposition to the summary

**IV.**

For the reasons stated, I will grant Dr. Wang's motion for summary judgment and dismiss Stewart's claim against him arising from any delay in Hep C treatment. Dr. Wang remains a defendant as to Stewart's claim arising from his middle finger injury. Warden Davis also remains as a defendant.

**ENTER**: This  14th day of August, 2019.

*Norman K. Moon*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

---

judgment motion that he received a full course of treatment in 2017, which began shortly after he filed his complaint. He also admits that the treatment has been successful, and that his Hep C is considered in remission.